UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ARK LABORATORY, LLC,

    Debtor.
_____/

Case No. 23-43403-MLO
Chapter 11
Hon. Maria L. Oxholm

JASON W. BANK, SOLELY IN HIS
CAPACITY AS SUCCESSOR TRUSTEE
OF THE ARK LABORATORY TRUST,

    Plaintiff,

v.

JAMES A. GROSSI, an Individual,
2210/305 LLC, a Michigan limited liability
Company, BRIAN TIERNEY,
Individually and as Trustee of the
TIERNEY FAMILY TRUST DATED
12/21/2018, NAMEER KIMINAIA,
Individually and as Trustee of the NAMEER
KIMINAIA LIVING TRUST DATED 5/31/2019,
TIERNEY FAMILY TRUST DATED
12/21/2018, NAMEER KIMINAIA
LIVING TRUST DATED 5/31/2019,
HAMID SATTAR, ION DIAGNOSTICS, LLC, a
Michigan limited liability company, and ION
MARKETING, LCC, a Michigan limited liability
company,

    Defendants.
_____/

Adv. P. Case No. 23-04496-MLO

### STIPULATED ORDER REGARDING DISCOVERY OF <u>ELECTRONICALLY STORED INFORMATION</u>

This matter came before the Court for consideration upon the *Stipulation for Entry of an Order Regarding Discovery of Electroncally Stored Information* [ECF No. 178] ("Stipulation") pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26, for the production of Electronically Stored Information ("ESI") according to this agreed order ("ESI Protocol Order"); the Court having read same and finding good cause for the entry of an ESI Protocol Order, the Court being otherwise fully and duly advised in the premises;

NOW, THEREFORE, the Court ORDERS as follows:

**1. SCOPE**

1.1 The procedures and protocols outlined herein govern the search for, review and production of ESI (as defined below) by a Party during the pendency of the above-captioned Adversary Proceeding.

1.2 As used in this ESI Protocol Order, the terms "ESI" or "Electronically Stored Information" mean discoverable documents and data existing in electronic form including e-mail, word processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible electronically stored information relevant to the claims or defenses of any Party subject to discovery pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26.

## 2. IDENTIFICATION OF RESPONSIVE ESI.

2.1 Documents and ESI, which are neither privileged nor otherwise protected, shall be timely reviewed and produced in accordance with this ESI Protocol Order, the *ESI Search Protocol Agreement* attached as **Exhibit 2** and the *ESI Production Protocol and Specifications* attached as **Exhibit 3** to the Stipulation. After receiving requests for production of documents, the party making the production (the "Producing Party") shall conduct a reasonable and good faith search for responsive ESI.

2.2 Absent a further order of the Court, and subject to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26((b)(2)(B), a Producing Party shall not have an obligation to search or produce from sources of ESI that in good faith it identifies as not reasonably accessible because of undue burden or cost in accordance with Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(b)(2)(B). On a motion to compel discovery or for a protective order, the Responding Party must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, this Court may nonetheless order discovery from the Producing Party if the Requesting

Party shows good cause, considering the limitations of Rule 26(b)(2)(C). This Court may specify conditions for the discovery.

2.3     **Search Terms.**  The Parties[1] shall apply the method of searching, and the words, terms, and phrases to be used to locate and identify potentially responsive ESI contained in Exhibit 2 to conduct the search.

2.4     **Custodians and Electronic Systems.**  The identities of the custodians set forth in the attached Exhibit 2 are the individuals whose email and other ESI will be searched, and any other electronic systems that will be searched. Any further custodians shall be identified and searched only if the Party requesting the discovery ("Requesting Party") identifies why searches of additional custodians are necessary and would not be largely duplicative.

2.5     **Technology Assisted Review.**  The Parties may meet and confer regarding the propriety of using a technology assisted review platform to identify potentially relevant documents and ESI in lieu of, in addition to, or in conjunction with identifying responsive ESI using the search terms and custodians/electronic systems as described in Sections 2.3 and 2.4 above.

---

[1] All capitalized terms not defined herein shall have the meanings ascribed in the Stipulation unless otherwise stated to the contrary herein.

2.6     **Date Range.**  Absent a further order of the Court, the Parties agree to date range set forth in Exhibit 2. To the extent that any Party wants to search dates outside of the agreed date range, the Parties shall meet and confer regarding the appropriate date range for searching sources of ESI.

2.7     **System Files.**  Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced.  The Parties shall meet and confer on any additional file types that also need not be processed, reviewed, or produced.

**3. PRODUCTION OF ESI**

3.1     **<u>Production Formats & Metadata.</u>**  The Defendants agree to produce ESI as Production Format according to the format specified in Exhibit 3 and Plaintiff agrees to produce responsive ESI  to Defendants in  PDF format. To the extent production of specific documents or ESI in the format described in Exhibit 3 would be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production pursuant to Federal Rule of Bankruptcy Procedure 7034 and Federal Rule of Civil Procedure 34(b)(2)(E).

3.1.1     **Embedded Objects.**  Embedded objects or files such as Excel spreadsheets, Word documents, or audio and video files, shall be extracted and searched consistent with its category of ESI.  Non-substantive embedded files, such as logos, need not be extracted.  All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol.  For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

3.1.2     **Appearance.**  Each document's electronic image shall convey the same information and image as the original document except for redactions for any privilege, which shall be designated on the image and logged, or for the confidential or identifying information.  Documents shall appear with any revisions and/or comments visible and printed.  Documents that present imaging or formatting problems shall be promptly identified and the Parties shall meet and confer in an attempt to resolve the problems.

3.1.3     **Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained

as it existed in the original file of the Producing Party or shall be documented in a load file or otherwise electronically tracked.

    3.1.4    **Color.** Documents containing color need not be produced in color in the first instance, unless production of such documents in grayscale or black and white would unreasonably obscure text or images. However, if good cause exists, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents requested to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests if the Requesting Party has demonstrated good cause, but need not make such production until the Parties reach agreement regarding apportionment of any additional costs associated with the production of documents in color or, in the absence of such agreement, until ordered to do so by the Court.

    3.1.5    **Exception Files**. Files that cannot be produced or imaged due to technical difficulties shall be identified as exception files and identified on a log listing the file's name, custodian, and reason for the exception. Common exception files include, without limitation, corruption, password protection, digital rights management, or proprietary software associated to the file.

3.2     **Email Threading.** To limit the volume of duplicative content produced from email threads, the Parties may utilize email-threading analytics software to exclude duplicative or "non-inclusive" content wholly contained within later-in-time or "inclusive" email threads), provided that the Producing Party treats all emails that have unique substantive content (including attachments) as inclusive emails that will not be excluded from production.

3.3     **Production Media.**  The Producing Party shall produce documents via upload to secure FTP site or on DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media").  Each piece of Production Media shall be preceded/labeled with (1) the name of the Party making the production, (2) the date of the production, (3) text referencing that it was produced in the title of this case; (4) the Bates Number range of the materials contained on the Production Media; and (5) any confidentiality designation(s) consistent with the terms of any Protective Order entered in this matter.  To maximize the security of information in transit, any Production Media may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

3.4     **Duplicate Production Not Required.**  ESI files need only be produced once.  The Producing Party will apply global deduplication to responsive ESI based on MD5 Hash values or an equivalent deduplication key.  Email will be deduplicated by family, not on an individual basis.  Additionally, to the extent reasonably accessible, all custodians of removed duplicates will be listed in an "All Custodians" field and identified by full name of the individual or departmental custodian.  Stand-alone documents may be deduplicated against email attachments provided that the email attachment is the duplicate that is produced and the custodian(s) of the removed duplicate(s) are entered into the All Custodian field.

3.5     **Inadvertent Disclosure.** If a Producing Party inadvertently produces a document that would otherwise be protected under the attorney-client privilege and/or work product doctrine, such production shall not be considered a waiver of any privilege and/or work product doctrine provided the Producing Party notifies the Receiving Party that such production was inadvertent and reasonably timely after discovery of such inadvertent production. Upon such notification, the Receiving Party shall return and/or destroy all copies of the subject documents. This ESI Protocol Order shall be interpreted to provide the maximum protection allowed by Federal law.

3.6     **Privilege Logs.**  A Party withholding documents based on one or more claims of privilege will produce a privilege log at the time of the production of non-privileged documents.  There will be no obligation to produce privilege logs identifying attorney-client communications with outside counsel concerning case strategy or the course of litigation that occur following the commencement of this lawsuit, including the efforts to locate and collect documents and ESI in response to a discovery request in this matter.  Nothing in this paragraph precludes depositions or discovery concerning the availability of data and custodians.

**4.  MISCELLANEOUS PROVISIONS**

4.1     If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the Parties shall meet and confer to agree on a reasonable, alternative form of production.  Any of the Parties may file a motion with the Court to seek individual relief from this ESI Protocol Order.

4.2     Each Party shall presumptively pay their costs for production of ESI sought by another Party; provided, however, each Party reserves the right to seek to reallocate the costs associated with production of ESI upon a motion filed pursuant to Fed.R.Bankr.P. 9014 showing that the proposed costs are not proportional to the needs of the case after considering the importance of the issues and the amount at stake in the action relative to the Parties' resources and the burden or expense of the

proposed ESI outweighs its likely benefit, consistent with Fed.R.Civ.P.26(b)(1) and Fed.R.Bankr.P. 7026.

4.3 Nothing in this ESI Protocol Order or shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at the appropriate time.

4.4 Nothing in this ESI Protocol Order is intended to or shall serve to limit any Parties' right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

4.5 The Parties may agree to modify or waive the terms of this ESI Protocol Order in writing signed by counsel for the affected Parties, subject to Court approval.

**Signed on July 9, 2024**



/s/ Maria L. Oxholm
**Maria L. Oxholm**
**United States Bankruptcy Judge**